# Miller's Appeal.

113  459
164  214
113  459
169   64

1. When a will is executed the natural and reasonable presumption is that the testator does not intend to die intestate as to any part of his property.

2. In the interpretation of a will all the parts thereof are to be construed in relation to each other, so, if possible, as to form one consistent whole. The intent of the testator is to be deduced from the language of the will taken as a whole.

3. A testator after directing that all his debts be paid, gave to his wife three hundred dollars of his personalty and one third of his real estate during her life. Then he gave " to his grand-daughter A. only surviving daughter of his son B., deceased, three hundred dollars." In the next and only remaining devise he gave " to my daughters C. D. E. and F. equal shares of my personal, real or mixed estate." *Held*, that the testator did not die intestate as to any part of his estate, and that his granddaughter A. was entitled to the legacy of three hundred dollars and no more.

February 10th, 1886. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

APPEAL from the Orphans' Court of *Somerset county:* Of January Term 1886, No. 277.

Appeal from the decree of said Court recommitting the report of the Auditor and confirming the amended Auditor's report made on the basis of the decree recommitting it, wherein Mary C. Miller, Phœbe Jane Pile, Tillie S. Lint, Annie E. Coleman and Maggie V. Coleman, are appellants, and James L. Pugh, guardian of Mabel M. Coleman, appellee.

Philip Coleman died on the 1st day of March, 1883, testate; leaving to survive him a widow, Elizabeth Coleman, and five children, viz:—Mary C., intermarried with Noah S. Miller, Phœbe Jane, intermarried with George A. Pile, Matilda S., since intermarried with Daniel G. Lint, Annie E. Coleman, Maggie V. Coleman, and a granddaughter, Mabel M. Coleman, being a daughter of Peter Coleman, deceased.

Philip Coleman was the owner of some personal property and three tracts of land. On the 16th day of January, 1883, said Philip Coleman made his will, in which he says: " I, Philip Coleman, farmer, being in ill health but of sound and disposing mind and memory, do make and publish this my last will and testament. . . . . . And as to my worldly estate and all the property, real, personal, or mixed, of which I shall die seized and possessed, or to which I shall be entitled at the time of my death, I devise, bequeath and dispose thereof in the following manner, to wit: First: My will and desire is that all my just debts and funeral expenses shall, by my exec-

utors, hereinafter named, be paid out of my estate as soon after my decease as may be convenient. Item. I give, devise and bequeath to my beloved wife, Elizabeth Coleman, three hundred ($300) dollars of my personal property, and the one-third of my real estate (the interest thereof annually during her natural life). I give and bequeath to my granddaughter, Mabel M. Coleman, only surviving daughter of my son, Peter Coleman, deceased, three hundred dollars.

I give and bequeath to my daughters, Mary C. Miller, wife of Noah S. Miller, Phœbe Jane Pile, wife of George A. Pile, Matilda S. Coleman, Annie E. Coleman, and Maggie V. Coleman, equal shares of my personal, real or mixed estate."

The testator did not appoint an executor. The will was duly admitted to probate on March 21st, 1883, and on same day letters of administration, c. t. a., were issued to Noah S. Miller and George A. Pile. The widow refused to take under the will. James L. Pugh was appointed Guardian of Mabel M. Coleman. Proceedings in partition in the Orphans' Court were had. Tract No. 1 was appraised at $6,282: No. 2 at $2,340; No. 3 at $200. On December 10th, 1883, No. 1 was awarded to Annie E. Coleman, Matilda S. Coleman, and Maggie V. Coleman, at $7,920, being the highest bid in advance of the valuation; and tract No. 2 to Mary E. Miller, at $2,730, and No. 3 at $315, being the highest bids in advance of valuation; and they on same day entered into recognizances respectively to secure the interest to the widow and to the other legatees.

The administrators, c. t. a., held an appraisement of the personal property; set apart $300 for the widow, and made sale of the balance. On May 5th, 1884, they filed their account, which showed a balance of $735.64 of personalty in their hands for distribution. This account was confirmed, and on July 22d, 1884, on motion the Court appointed H. L. Baer, Esq., Auditor, to made a distribution of the proceeds of personal estate, as well as the real estate, after deducting the expenses, and fix the amount coming to the heirs and legal representatives of the decedent. The Auditor found that certain advancements were made to some of the children, and he took them into account in making the distribution. The Auditor held that the granddaughter, Mabel M. Coleman, was entitled to but $300, under the will; the widow to one third of the personal estate and the interest of one third of the real estate during her life; and the remainder of the estate, real, personal, and mixed, belonged to the five surviving children of the testator, and made the distribution accordingly.

The guardian of said grandchild, filed exceptions to·said Auditor's report, claiming *inter alia*, that she was entitled in

addition to the $300 bequest, to an equal share with the children of the testator in the residue of his estate.

The Court sustained the views of the exceptant and held that the testator died intestate as to part of his estate, and that the granddaughter was entitled to $300 above the shares of each of the testator's daughters, and re-committed the report to the Auditor for further report on the basis of the opinion. The Auditor, in pursuance of such opinion and decree, recast his distribution, and *inter alia*, distributed to Mabel M. Coleman $300, and then admitted her to an equal share with the children of the testator in the remainder; making her share $2,171.45$\frac{1}{9}$, instead of $300, as the appellants claim it should be. This amended report was filed, and confirmed by the Court.

The following is the opinion of the Court, BAER, P. J., sustaining the said exceptions to the Auditor's report, filed May 20th, 1885:

Philip Coleman died testate, leaving a widow, Elizabeth Coleman; five children, Mary C., Phœbe Jane, Tilly S., Annie E., and Maggie V., and a granddaughter, Mabel M. Coleman, only child of his deceased son, Peter Coleman.

His real estate was valued and appraised on proceedings in partition, and taken by some of the heirs. His executor filed an account of his trust, showing a balance in his hands arising from the personal estate. On petition presented, an Auditor was appointed to make a distribution of the personal as well as the real estate, and report the amount of recognizances to be entered into, &c.

After providing for the payment of debts, &c., he bequeaths $300 of personal property to his wife, and the interest of one third of his real estate, payable annually. About this clause there is no controversy. The widow elected not to take under the will, and she finds no fault with the Auditor's report.

The question raised arises upon the two next clauses, which read as follows:

"Item. I give and bequeath to my granddaughter, Mabel M. Coleman, only surviving daughter of my son, Peter Coleman, deceased, $300."

"Item. I give and bequeath to my daughters, Mary C. Miller, wife of Noah S. Miller; Phœbe J. Pile, wife of George Pile; Matilda S. Coleman, Annie E. Coleman, and Maggie V. Coleman, equal shares of my personal, real or mixed estate."

The Auditor charged Mary C., Phœbe J., Annie E. and Maggie V., each with an advancement, reports an indebtedness of Peter of $86.86, and distributed the personal estate, after deducting one third to widow, and $300 of legacy in favor of Mabel M., the granddaughter, to and among the children,

taking into account the advancements made, and reports a distribution of the real estate on the same basis. The counsel of Mabel M., the granddaughter, filed exceptions, claiming that under the will she was entitled in right of her deceased father, Peter Coleman, to an equal share with her aunts, the daughters of decedent, in addition to the $300 legacy. The contention is now before us, and must be determined by a proper construction of the will. The legacy given to Mabel by the clause or item: "I give and bequeath to my granddaughter, Mabel M. Coleman, only surviving daughter of my son, Peter Coleman, deceased, $300," is a gift to the granddaughter (for a legacy is a gift or gratuity). Did it disinherit her? As an heir at law, which Mabel was, she could not be disinherited except by express devise, or necessary implication of such strong probability, that an intention to the contrary cannot be supposed.

The above devise in itself does not disinherit her; the giving of a legacy to her did not exclude her from further participation in his estate; to exclude her there must be an actual devise or disposition of the residue.

A man may by his will take his estate out of the intestate statute by devising it to others than his heirs at law, but if he do not, he cannot control these statutes.

There is no expressed intent in the will that she shall have only $300 out of the estate.

The learned Auditor, however, treats the clause or item: "I give and bequeath to my daughters, Mary C. Miller, wife of Noah S. Miller; Phœbe J., wife of George A. Pile; Matilda S., Annie E. and Maggie V., equal shares of my personal, real, or mixed estate," as a devise of the residue of the estate to the five children named. If this construction of the clause can be sustained, then his conclusions and report are right.

Did the testator take the residue out of the intestate statutes by devising it to others? Does such a strong probability of a devise exist that an intention to the contrary cannot be supposed? The language of the will itself in this clause is not a devise of all, or of the rest and residue of my estate to my five daughters, but a bequest to them of "equal shares of my estate, real, personal, or mixed." The intent of the testator, as gathered from the introduction, was to dispose of the whole estate, and is to be taken into consideration in connection with the devising clause in ascertaining whether the residuary estate after payment of debts and legacies was devised over to others.

The preamble or introductory part of this will is in the following words: "And as to my worldly estate, and all the property, real, personal, and mixed, of which I shall die seized

and possessed, or to which I shall be entitled at the time of my death, I devise, bequeath and dispose thereof in the following manner," may indicate an intention not to die intestate as to any part of his estate, and might afford a reasonable presumption that the dispositions made of portions of his estate was intended to embrace all the testator's interest therein, if a disposition thereof was really made. Whether these introductory words operate as a devise or bequest, depends upon what may follow.

From these alone it might be fairly presumed that he intended to dispose of all his estate—he may, nevertheless, have failed to do so. In this case has he done so?

The question does not turn on what intention the testator entertained, but what intention is expressed in, or may be discovered from, the whole will. Judged of exclusively by the words of the instrument as applied to the subject matter, and the surrounding circumstances, keeping in view the rule, the heir is not to be disinherited unless the intent to do so is very clearly expressed, or appears by necessary implication, thus avoiding the two extremes, the first that of arbitrary conjecture —for the court cannot make a will—and the other that of strictness. As we view the will, the letter of the will does not exclude the granddaughter—and devising to his five daughters equal shares of his estate is not, when there is another heir at law, the same as devising to them all the residue of his estate in equal shares; the latter by the letter would exclude the granddaughter, and disinherit her; the former would not, because the five daughters can be made to share alike in his estate, even though the granddaughter shall in right of her father share with them. These five daughters would be receiving equal shares of his estate, whether the granddaughter does or does not take an equal share. But what was the intention of the testator? Counsel for the daughters say the intention of the testator, as discovered from the preamble, was to dispose of all, and not die intestate; be it so. Does the will dispose of the whole estate? The preamble or introduction shows an expressed intention to do so, but does the will by a devising clause dispose of the whole? If so, it must be by the clause, " I give and bequeath . . . . . equal shares of my estate." If, instead of a legacy of $300 given to the granddaughter, the clause giving her the legacy had been omitted and the granddaughter had not been named at all, would the clause, " I give my five daughters equal shares of my estate," have disinherited the granddaughter, who could only be disinherited as heir at law by express devise, a necessary implication when no negative words appear.

It was conceded in the argument that the testator had an

only son Peter, the father of Mabel, who is the only child surviving him, and that she lived in the family of the testator, her grandfather, from the death of the son, her father, to the death of the testator, her grandfather—this is one of the surrounding circumstances. A plain reading of the will seems to be : I give and bequeath to my granddaughter $300, and to my five daughters equal shares of my estate. There is no repugnancy or contradiction in its natural sense as a gift of $300 to the granddaughter above the share of each of the daughters without doing violence to the language of the will, or to any intention of the testator discoverable from the will. If there were any doubt as to the intention of the testator, or as to the proper construction of the will, the Court would adhere as closely as possible to the general rules of inheritance, and this would result in the same distribution as that we have suggested, and as resulting from the view herein expressed.

We, therefore, re-commit the Report to the Auditor for further report on the basis of this opinion.

The Auditor reported as directed, and the Court confirmed said report. The appellants thereupon took this appeal and filed, *inter alia*, the following assignment of error :

The Court erred in directing the Auditor to distribute the estate upon the basis of their opinion, filed May 20th, 1885, to wit : to give to the granddaughter the $300 legacy and an equal share of the residue of the estate with the children of the testator, and in confirming his report made on that basis, August 4th, 1885.

*Valentine Hay* (*Fred. W. Biesecker* with him), for appellants.—The learned judge below based his opinion entirely on the rule that an heir at law can only be disinherited by express devise or necessary implication of such strong probability that an intention to the contrary cannot be supposed. We do not question the correctness or propriety of the rule, but we do think he lost sight of other fundamental rules of construction which must be invoked in the construction of this will, and when applied leave no room for that rule to operate. Had he called to his aid the following rules, we feel confident he would have arrived at a different conclusion from what he did :

1. Where there is a will, no presumption of an intent to die intestate as to any part of the estate can be made, where the words of the testator will carry the whole, or a contrary intent cannot be deduced from the language : Stehman *v.* Stehman, 1 Wr., 466 ; Raudenbach's Appeal, 87 Pa. St., 51 ; Hofins *v.* Hofins, 92 Id., 305 ; Little's Appeal, 31 P. F. S., 190 ; Appeal of the Board of Missions, &c., 10 Nor., 507.

[Miller's Appeal.]

2. The intent of the testator is to be gathered from the four corners of the will, taken as a whole: Lynn v. Downes, 1 Yeates, 518; Mohn's Appeal, 76 Pa. St., 92.

3. The construction of the will is to be made upon the entire instrument, and not merely upon disjointed parts of it; consequently all its parts are to be construed with reference to each other: 2 Williamson Ex., p. 1155; Turbott v. Turbott, 3 Yeates, 187; Schott's Estate, 28 P. F. S., 40.

4. The intention of the testator is not to be gathered from the terms of a particular devise; the construction must be that which is consistent with the whole scheme of the will: Blackmore v. Hickman, 32 P. F. S., 288; 24 Id., 414.

5. Particular expressions that would stand in the way of the general intent of the testator, are to be construed in subordination to it, or disregarded: Schott's Estate, 28 P. F. S., 40; Doebler's Appeal, 64 Id., 9; Jones's Appeal, 3 Grant, 169.

6. A clearly expressed intention in one portion of the will is not to yield to a doubtful construction in any other portion of the instrument. Plain and distinct words are only to be construed by words equally plain and distinct: 1 Redfield on Wills, 433–438; Sheetz's Appeal, 1 Nor., 213.

7. When the will admits of two constructions, that is to be preferred which will render it valid: Jarman on Wills, vol. 3, p. 707.

8. That words in all cases are to receive a construction which will give to every expression some effect, rather than one that will render any of the expressions inoperative, and of two modes of construction that is to be preferred which will prevent a total intestacy: Jarman on Wills, vol. 3, p. 707.

9. General devises and bequests are construed to include all which it was in the power of the testator to dispose of—all, whether real or personal, at time of his decease: 1 Redfield on Wills, p. 385.

10. Words may be supplied to carry out a defectively expressed intent of the testator: 1 Redfield on Wills, p. 450; McKeehen & Swiler v. Wilson, 3 P. F. S., 74.

11. Where the testator in the preamble or introductory part of his will declares his intention to dispose of his entire estate, this declared intention is always carried down to the devising clauses to show the intent, and will help the interpretation in case of doubt: Busbey v. Busbey, 1 Dall., 226; Caldwell v. Furguson, 2 Yeates, 250; Doughty v. Brown, 4 Id., 179; Cassel v. Cooke, 8 S. & R., 289; Peppard v. Deal, 9 Barr, 140; 9 Id., 151; 11 Id., 370.

*James L. Pugh*, for appellee.—An heir at law can be disinherited only by express devise or necessary implication of such

3 AMERMAN—30

strong probability that an intention to the contrary cannot be supposed, and in the construction of a will of doubtful meaning every fair intendment is to be made in favor of the heir at law; and the same will apply to all heirs of the testator unless more remote than children or their issue: 1 Redfield on Wills, 434–435; Rupp v. Eberly, 79 Pa. St., 141; Bender v. Deitrick, 7 W. & S., 284; French v. McIlhenny, 2 Binn., 13; Weber's Appeal, 17 Pa. St., 479; Minter's Appeal, 40 Id., 111.

Mr. Chief Justice MERCUR delivered the opinion of the Court, October 4th, 1886.

This contention is whether Philip Coleman's will disposed of his whole estate? In the introductory part thereof he clearly expresses his intention to dispose of the whole. He says, "And as to my worldly estate, and all the property, real, personal and mixed, of which I shall die seised and possessed, or to which I shall be entitled at the time of my death, I devise, bequeath and dispose thereof, in the following manner, to wit." Language more explicit and comprehensive, evincing an intention to dispose of all his property could not be used. It is true, notwithstanding all this the testator may, by apt words or by clear inference, have refrained from disposing of all his estate.

No words following, expressly indicate an intention to dispose of anything less than his whole property. Are there any words therein from which a limitation or exception may reasonably be implied?

After directing that all his debts shall be paid, he gives to his wife three hundred dollars of his personalty, and one third of his real estate during her life. Then he gives "to his granddaughter, Mabel M. Coleman" (the appellee), "only surviving daughter of my son, Peter Coleman, deceased, three hundred dollars." In the next, and only remaining devise, he gives "to my daughters, Mary C. Miller, wife of Noah S. Miller; Pecebe J. Pile, wife of George A. Pile; Matilda S. Coleman, Annie E. Coleman and Maggie V. Coleman, equal shares of my personal, real or mixed estate."

Considering the whole will there is no reason to infer that the testator inadvertently omitted from this paragraph the name of his granddaughter. He had just given to her by name a specific legacy, but had withheld all such legacies from his daughters. He then proceeded to give to his daughters only, carefully excluding his granddaughter therefrom.

It is contended, however, inasmuch as the testator in the last paragraph does not in express words say he disposes of all his residuary estate, it does not pass. Why not? The plain import of the words is such as to reasonably and presumptively

pass all his remaining property. This paragraph, however, does not stand by itself alone. It must be read in connection with the introductory part of the will. He therein expressly declares his intention to dispose of all his property. No subsequent words modify or change that intention. His daughters were one degree nearer to him than his granddaughter was. He had an undoubted right to discriminate between them. He did so for reasons satisfactory to himself.

When a will is executed the natural and reasonable presumption is that the testator does not intend to die intestate as to any part of his property: Leigh v. Savidge, 1 McCarter (N. J.), 124; Gilpin v. Williams, 17 Ohio St., 396; Gourley v. Thompson, 2 Snead, 387; Jarnagin v. Conway, 2 Humph., 50; Boyd v. Latham, Busb. (N. C.) Law, 365, cited in notes to 2 Williams on Executors, 1088; Appeal of Board of Missions, 91 Pa. St., 507.

In the interpretation of wills it is one of the general rules that all the parts thereof are to be construed in relation to each other, so, if possible, as to form one consistent whole. The intent of the testator is to be deduced from the language of the will taken as a whole. The inquiry is not necessarily limited to a consideration of the particular devises, but includes the whole instrument. Hence, when the language in a specific devise by itself alone might give a life estate only, yet, as was declared by Mr. Justice DUNCAN in Cassel v. Cooke, 8 S. & R., 289, the words "worldly estate in the beginning of a will, though not of themselves sufficient to pass a fee, are always carried down to the devising clause, to show the intention." Harden v. Hays, 9 Pa. St., 151, and McCollough v. Gilman, 11 Id., 370, declare the same rule substantially.

The conclusion to which we have come does not exclude the grandchild from participating in the estate of the testator. It merely recognizes and declares the distinction which he made between her portion and the portions of his daughters in disposing of his whole "worldly estate: " Raudenbach's Appeal, 87 Id., 51.

It follows the Auditor was right in his first report, and the learned judge erred in decreeing otherwise. The assignments of error are sustained.

> Decree reversed at the costs of the appellee, and record remanded with instructions to decree distribution conformably with this opinion.